FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2015 JUN 30 P 2: 40

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>ANTHONY GARZIONE<br><br>Relator,<br><br>v.<br><br>PAE GOVERNMENT SERVICES, INC.<br>d/b/a PAE<br>1320 N. Courthouse Road, Ste. 800<br>Arlington, VA 22201<br><br>Defendant. | Civil Action No. 1:15CV833<br><br>**FILED UNDER SEAL<br>PURSUANT TO 31 U.S.C.<br>§ 3730(b)(2)**<br><br>(Jury Trial Requested) |

## COMPLAINT

Relator Anthony Garzione, by and through undersigned counsel, for his Complaint against defendant, PAE Government Services, Inc. ("PAE"), alleges as follows:

### JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. Section 1331, as Thompson's claims are premised on the Federal Civil False Claims Act, codified at 31 U.S.C. Sections 3729-3733, as set forth herein.

2. Venue is proper in the Eastern District of Virginia pursuant to 31 U.S.C. Section 3732 and 28 U.S.C. Section 1391 as the Defendant resides in this judicial district.

### PARTIES

3. Plaintiff Anthony Garzione is a former employee of Defendant PAE, where he worked as a Program Subcontracts Manager.

1

4.     Defendant PAE Government Services is a United States Department of State contractor.

## FACTS

5.     PAE employed Garzione as a Program Subcontracts Manager, working on a support contract for the Department of State ("DOS") in Baghdad, Iraq.

6.     Garzione was a successful employee and met PAE's legitimate performance expectations.

7.     In July 2013, PAE was awarded a contract by DOS to provide life support and logistical function for DOS sites in Iraq. The contract is an indefinite-delivery, indefinite-quantity ("IDIQ") contract.

8.     As part of the contract, PAE is to provide food services at a task order level.

9.     At the initiation of the contract, bottled water was supplied separately from other food services and supplies, through the Department of Defense's Defense Logistics Agency ("DLA").

10.    However, at some point in 2014, the DLA determined that it would no longer supply bottled water for BLiSS after December 31, 2014. At that point, DOS issued a Task Order for bottled water to PAE for any bottled water required outside of the DLA supply through the end of 2014.

11.    PAE then became aware that the DOS was going to issue a longer-term, 4-year Task Order for the bottled water.

12.    In August 2014, Garzione was requested to investigate bottled water supplier options. He researched and provided PAE with 9 potential suppliers, including Agility with Innovation ("AWI").

13. The Dubai HUB of PAE issued a small solicitation to 4 or 5 of the listed suppliers. A purchase order was never issued.

14. Garzione was later requested to issue a Notice to Proceed to Taylors International, Inc. ("Taylors") for the procurement of the bottled water.

15. Garzione questioned why Taylors was chosen as the subcontractor, given that its quoted response to the solicitation was higher than the other suppliers.

16. Garzione was told that Taylors was simply best suited to receive the contract.

17. Garzione informed his supervisor that he intended to reissue the competition for bottled water suppliers.

18. In or around September 2014, PAE submitted a response to the DOS's Task Order naming Taylors as the subcontractor that would supply bottled water.

19. This was done despite lower bids and without any legitimate explanation.

20. Accordingly, PAE intentionally overcharged the DOS for the bottled water procurement.

21. Additionally, in presenting claims for payment to DOS for the bottled water provided by Taylors, PAE intentionally falsely certified to DOS that it was providing the lowest-priced bottled water.

22. Garzione was in the process of assessing new bids for the bottled water subcontract when, in November 2014, he discovered PAE's naming of Taylors in the response to the Task Order.

23. When Garzione demonstrated that AWI could provide the bottled water at significantly less cost to the Government, he was met with resistance at PAE. PAE employees suggested that AWI could not meet the Government's brand requirements, that AWI's supply of

water created logistical challenges for PAE, and that AWI could not provide the required testing of bottled water required by DOS. These explanations were false.

24. Although Garzione responded to each of these concerns, PAE persisted in awarding the subcontract to Taylors, rather than the lower-cost supplier, AWI.

*The Illegal False Claim*

25. In submitting that Taylors would supply the bottled water for BLiSS in response to the Task Order, PAE certified that the subcontracting relationship was consistent with its contractual obligations to the Government.

26. By contract, PAE is required to use a competitive process for selecting subcontractors.

27. PAE's contract with DOS incorporates numerous Federal Acquisition Regulations, including section 52.244-5(a).

28. Federal Acquisition Regulation 52.244-5(a) prescribes that: "The Contractor shall select subcontractors (including suppliers) on a competitive basis to the maximum practical extent consistent with the objectives and requirements of the contract."

29. As such, PAE was contractually obligated to engage in a competitive selection process.

30. By failing to engage in this process, in spite of pressure to do so from Garzione and when it was practical to do so, PAE knowingly presented a false claim to the Government constituting a false statement for payment in violation of the False Claims Act.

31. PAE's false certification that the bottled water procurement was competitively-sourced was material to the Government's decision to pay PAE's claims for payment for the bottled water procurement, because it had a natural tendency to influence the Government to pay

for the procurement by encouraging the Government to believe the bottled water was as cheap as possible while meeting the procurement's standards.

32. PAE had presented these false claims with the intent of misleading the Government each time it has presented a claim for payment for the bottled water procurement, intentionally misrepresenting that the procurement was competitively-sourced in compliance with their contractual and regulatory obligations.

33. According to the bids submitted to Garzione in the course of his employment at PAE, Taylors will supply bottled water at a significantly higher cost to the Government than would AWI.

34. Taylors's bid provided that it would supply 12-packs of bottled water for $3.65 per 12-pack. A competitor, Pearl, bid to provide 12-packs at a rate of $3.50 per 12-pack. A third competitor, AWI, bid to provide 12 packs at $1.18 per 12-pack.

35. At those prices, a month supply of bottled water from Taylors is projected to cost the Government $315.341.75. At Pearl's pricing, a month's supply would cost $302,382.50. A month supply from AWI would cost $101,946.10.

36. Over the course of the four-year contract permitted by the DOS's Task Order, the Government will unnecessarily spend an additional $10.2 million dollars on bottled water for BLiSS.

37. Ultimately, PAE decided to forgo a competitive process for determining a bottled water supplier without notifying DOS.

38. Because of its contractual obligation to issue contracts by means of a competitive process, PAE submits a false claim for payment when it seeks payment for the non-competitively sourced and overpriced bottled water provided by Taylor.

*Garzione Investigates and Acts to Stop False Claims*

39. In July 2014, Garzione contracted with Taylors for Taylors to test various brands of water to ensure compliance with the contract's standards.

40. In September 2014, while Garzione compiled and priced options in accordance with PAE's contract with DOS and Federal Acquisition Regulations which require that such a subcontract be competitively priced, PAE supervisor Ken Messner awarded the bottled water procurement to PAE's subcontractor as to other food items, Taylors, regardless of price.

41. In early October 2014, Garzione reviewed Taylors's first two invoices, which were significantly higher than other options he had priced.

42. On October 8, 2014, Garzione emailed PAE supervisors and colleagues, including Faisal Valappil, Ken Messner, Michael Stackpoole, John Hilker, Burgess Newsom, Peter Capwell, and Nicholas Price to explain that Taylors pricing appeared higher than other options.

43. Garzione also explained that he believed PAE failed to follow appropriate contractual provisions and regulations by granting Taylors the subcontract award without pricing other options.

44. On November 19, 2015, Garzione arranged to have bottled water from AWI tested to confirm that it met the bottled water procurement's standards. Garzione explained that AWI could provide DOS significant saving over Taylors.

45. Ken Messner responded to an email chain arranging to have AWI's water tested by stating that Taylors had already been awarded the food and beverage subcontract, and that even though DOS asked PAE to provide a new, and much greater bottled water procurement, that PAE was required to award this new procurement to Taylors. This was false.

46. On December 3, 2014, AWI sent PAE samples for testing.

47. On December 3, 2014, Garzione asked Taylors to test the AWI samples for compliance with the bottled water procurement standards, pursuant to Taylors agreement to test water brands in July 2014.

48. Taylors refused to test AWI's product, claiming that AWI was a competitor with Taylors.

49. Throughout October, November, and December 2014, Garzione repeatedly told supervisors that the award to Taylors was causing the government to pay more for the bottled water procurement than the government should.

50. Throughout October, November, and December 2014, Garzione repeatedly complained to supervisors that awarding the bottled water procurement to Taylors without considering competitors' prices violated PAE's contractual obligations to DOS and Federal Acquisition Regulations.

51. By supplying the over-priced water under the contract with DOS, PAE overcharged the Government and falsely certified compliance with PAE's contract with DOS and regulations requiring that the water be competitively- sourced.

52. On February 4, 2015, PAE terminated Garzione's employment without reason.

## CAUSES OF ACTION

### COUNT ONE
### FALSE CLAIMS ACT – PRESENTATION OF FALSE CLAIMS
### 31 U.S.C. § 3729(a)(1), 31 U.S.C. § 3729(a)(1)(A)

53. Relator incorporates by reference every allegation.

54. As part of its contract with the Department of State and the Federal procurement process, Defendant PAE filed false certifications that it competitively-sourced the bottled water procurement it granted to subcontractor Taylors.

55.     Defendant PAE knowingly violated 31 U.S.C. § 3729(a)(1)(A) by falsely certifying to the Government at it complied with the requirements of its contract with the Department of State and Federal Acquisition Regulations.

56.     Defendant PAE knowingly violated 31 U.S.C. § 3729(a)(1)(A) by causing to be presented, a false or fraudulent claim for payment or approval.

## COUNT TWO
## FALSE CLAIMS ACT – MAKING OR USING FALSE RECORDS OR STATEMENT TO CAUSE CLAIM TO BE PAID
## 31 U.S.C. § 3729(a)(1), 31 U.S.C. § 3729(a)(1)(A)

57.     Relator incorporates by reference every allegation.

58.     Defendant PAE and their agents and employees knowingly and with reckless disregard for the truth made, used, and/or caused to be made or used false statements, claims, and records material for payment from the United States that included claims and charges for the bottled water procurement that did not comply with PAE's contract's and Federal Acquisition Regulation's requirement that such procurement and subcontract be competitively-sourced.

## COUNT THREE
## RETALIATION
## [31 U.S.C. Sections 3729-3733]

59.     Plaintiff re-alleges every allegation.

60.     PAE's has a duty under the False Claims Act, 31 U.S.C. § 3730(h), to refrain from taking retaliatory actions against employees who take lawful actions in furtherance of a False Claims Act action, including investigation for, testimony for, or assistance in an action filed under this section, or who act to stop violations of the False Claims Act.

61.     Plaintiff took lawful actions in furtherance of a False Claims Act action, including investigation for a potential action to be filed under this section and attempted to stop a violation

of this section and, as such, engaged in protected activity under the False Claims Act and other laws.

62. Defendant knew or should have known that Plaintiff's activities investigating and opposing their unlawful conduct, including his investigation for, testimony for, or assistance in an action filed under this section, were in connection with a potential False Claims Act action.

63. Defendant retaliated against Plaintiff for his lawful actions taken in furtherance of a False Claims Act action, including but not limited to her investigation and efforts to prevent further False Claims Act violations by Defendant.

64. As a result of his reporting of Defendant's False Claims Act violations to management, Defendant terminated Plaintiff on February 4, 2015 in violation of 31 U.S.C. § 3730(h).

65. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proved at trial.

66. As a direct, proximate, and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damages in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, in amounts within the jurisdictional limits of this Court, to be proved at trial.

67. In acting as alleged above, Defendant acted maliciously, fraudulently, despicably, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper motive

amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is entitled to recover punitive damages from Defendants in amounts to be proved at trial.

## JURY DEMAND

68. Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Relator/Plaintiff, Anthony Garzione, prays for the following relief:

a. Defendant be enjoined from violating the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* and from concealing, removing, encumbering, or disposing of assets that may be required to pay the civil monetary penalties imposed by the Court.

b. The Court enter judgment against Defendant in an amount equal to three times the amount of damages the United States has sustained as a result of Defendant's actions, as well as a civil penalty against Defendant for each violation of 31 U.S.C. § 3729.

c. Relator be awarded the maximum allowed pursuant to 31 U.S.C. § 3730.

d. Relator be awarded all costs and expenses of this action, including attorneys' fees pursuant to 31 U.S.C. § 3729.

e. Back pay;

f. Front pay;

g. Compensatory damages;

h. Punitive damages;

i. Reasonable attorneys' fees and court cost associated with this suit;

j. Awarding prejudgment interest, costs and disbursement as appropriate herein; and

k. Other such relief as may be appropriate to effectuate the purposes of 28 U.S.C. Section 3729 and 3730, and as this Court and jury deems equitable, appropriate, and just.

        Respectfully Submitted,

_____
Jack B. Jarrett
Va. Bar # 86176
Attorney for Anthony Garzione
The Spiggle Law Firm, PLLC
4830B 31st St., S.
Arlington, Virginia 22206
(202) 449-8527 (phone)
(202) 540-8018 (fax)
jjarrett@spigglelaw.com