**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| United States of America ex rel Anthony Garzione<br><br>        Plaintiff,<br><br>v.<br><br>PAE Government Services, Inc.<br><br>        Defendant. | Civil Action No. 1:15-cv-833 |

**DEFENDANT PAE GOVERNMENT SERVICES, INC.'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**
**AMENDED COMPLAINT PURSUANT TO RULES 12(b)(6) AND 9(b)**

Defendant PAE Government Services, Inc. ("PAE"), through its undersigned counsel,

respectfully submits this Memorandum in support of its Motion to Dismiss the Amended

Complaint filed by Relator Anthony Garzione ("Garzione").

## <u>INTRODUCTION</u>

Garzione's Amended Complaint fails to remedy the pervasive legal insufficiencies of his

initial complaint.  Like that complaint, Counts I and II of the Amended Complaint do not satisfy

the elements of a False Claims Act ("FCA") violation.  Rather, they allege at most that, by

making award of a subcontract for bottled water to a bidder other than the lowest priced one,

PAE breached FAR 52.244-5, a contract provision that requires PAE to award subcontracts on a

competitive basis "to the maximum extent practical," and that this alleged breach, *ipso facto*,

resulted in the charging of "unreasonable" cost to the Government, in alleged violation of FAR

31.201-2 and 31.201-3.  As PAE explained in its initial motion to dismiss, however, and as

explained further below, even assuming the facts Garzione alleges are true, PAE has not

breached its obligations under FAR 52.244-5 and, as a consequence, also has not violated FAR 31.201-2 and 31.201-3.

Indeed, as Garzione admits, PAE solicited — and received — multiple bids for the bottled water subcontract, thereby satisfying its obligations under FAR 52.244-5 and any concomitant requirements under FAR 31.201-2 and 31.201-3.  Under FRCP 12(b)(6), this alone is fatal to Counts I and II of the Amended Complaint because, without any contractual or regulatory violation, the Amended Complaint fails to plead falsity—a required element of an FCA violation.  In addition, Counts I and II also fail to allege facts sufficient to show two other required FCA elements:  scienter and materiality.  PAE's interpretation of the requirements of the FAR are, at the very least, reasonable, thus negating scienter, and, in any event, any alleged non-compliance was not material to any claims for payment PAE has made to the Government.

Moreover, even if Counts I and II of Garzione's Amended Complaint could somehow survive under FRCP 12(b)(6) — which they cannot — they would fail under FRCP 9(b), as Garzione has utterly failed to plead fraud with particularity.  The Complaint does not identify any specific claim or invoice that contained costs for the bottled water subcontract, and Garzione is improperly asserting liability for claims that have not yet even been submitted.  Nor does the Complaint identify a specific transaction that established the alleged fraud.  The Complaint also does not establish when or how the allegedly false claims were submitted, or provide any description of what PAE is alleged to have submitted to certify that the subcontract complied with the relevant regulations.  Garzione's vague and broad references to the timing of when PAE should have submitted invoices under the contract do not remedy the paucity of necessary facts in the Amended Complaint.

Finally, Garzione's retaliation claim stated in Count III also should be dismissed under FRCP 12(b)(6) for failing to state a claim upon which relief can be granted. Garzione has not shown how the actions he took in response to the subcontract award were protected activity, as opposed to mere complaints about PAE's alleged failure to award to the lowest priced bidder.

For all of these reasons, as explained in detail below, the Court should grant PAE's Motion to Dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.    PAE's Prime Contract with DOS

In July 2013, PAE was awarded a prime contract by the Department of State ("DOS") to provide life support and logistical functions for DOS sites in Iraq.[2] *See* Amend. Compl. ¶ 7. The contract is an indefinite delivery/indefinite quantity ("ID/IQ") contract under which DOS issues task orders for certain services that PAE will provide. *Id.* Garzione claims that PAE has an existing task order for food services that was issued under the BLiSS Contract. *Id.* ¶¶ 10-11.

### B.    PAE Solicits and Receives Multiple Bids for the Bottled Water Task Order

Garzione (who was at the time a PAE employee) claims that from around July 2013 to July 2014, the Defense Logistics Agency ("DLA") supplied bottled water for the BLiSS contract. *Id.* ¶¶ 21, 24. According to Garzione, at some point in 2014, DOS issued task order SAQMMA14F0721 to PAE "for bottled water outside of the DLA Supply." *Id.* ¶¶ 26, 27; *see also* Task Order SAQMMA14F0721, Mod. 4 (excerpt) (attached as Ex. B). The Task Order stated that the bottled water had to meet certain quality and safety standards and would be

---

[1] This factual background is based on the allegations and documents referenced in the Amended Complaint. Although PAE disputes many of the Amended Complaint's allegations, they are assumed to be true solely for purposes of this motion to dismiss.

[2] It appears that Garzione is referring to Contract No. SAQMMA-13-D-0120, a contract for Baghdad Life Support Services (hereinafter referred to as the "BLiSS Contract") awarded to PAE in July 2013. *See* BLiSS Contract (excerpt) (attached as Ex. A).

sampled and tested to ensure it met these standards.  Ex. B, Task Order, Mod. 4.  The Task Order

did not set forth a maximum amount of bottled water that it expected PAE to supply.  *Id.*

Garzione contends that in July or August 2014, PAE issued a "request for bids to supply

4,000 bottles of water for testing from potential subcontractors interested in winning the

subcontract to provide the water the Defense Logistics Agency had previously supplied."

Amend. Compl. ¶ 29.  Garzione asserts that he was asked to investigate bottled water supplier

options.  *Id.* ¶ 31.  Garzione claims that he reviewed bids from at least nine potential bottled

water suppliers submitted in response to PAE's request.  *Id.* ¶ 32.  Garzione further alleges that

three suppliers, including Taylors International, Inc. ("Taylors"), provided a price per 12-pack of

bottled water as follows: Taylors quoted a price of $3.65 per 12 pack; Pearl quoted $3.50 per 12

pack; and Agility with Innovation ("AWI") quoted $1.18 per 12 pack.  *Id.* ¶ 34.

**C.      PAE Awards the Bottled Water Subcontract to Taylors International, Inc.**

According to Garzione, PAE issued a Notice to Proceed ("Notice") to Taylors for

procurement of the bottled water through the end of November 2014.  *Id.* ¶ 38; *see also* Notice to

Proceed at 1 (attached as Ex. C).  The Notice was issued on September 23, 2014, and signed by

Garzione.  Ex. C, Notice at 1.  The Notice indicated that Taylors was awarded the bottled water

requirement under its existing subcontract with PAE and listed Garzione as the point of contact

on contractual issues.  Ex. C, Notice at 1, 2.

Garzione claims that he questioned why Taylors was selected as the subcontractor given

that it allegedly had a higher price than other offerors.  Amend. Compl. ¶ 40.  According to

Garzione, PAE explained that Taylors was "best suited" to receive the contract.  *Id.* ¶ 41.

Despite this explanation, Garzione alleges that he told his supervisor he was going to reissue the

competition for the bottled water subcontract "for the longer-term contract that would apply after

November 2014."  *Id.* ¶ 42.  Garzione further claims that in September 2014, PAE submitted a

response to DOS's task order identifying Taylors as the subcontractor that would supply the bottled water. *Id.* ¶ 43.

**D.      Garzione Continues to Solicit Prices for Bottled Water**

Garzione claims that he continued to solicit prices for bottled water from other suppliers for the longer-term contract. *Id.* ¶ 50.  Garzione alleges that in connection with these efforts, he suggested to other PAE employees that PAE could award a purchase order to Pearl, which had offered a price of $3.60 per 12-pack, and that Pearl "perhaps could charge a lower rate" for a larger quantity of bottled water. *Id.* ¶ 52, 60.  Garzione does not allege that Pearl (or any other supplier) met all of the criteria, such as the quality and safety standards and testing requirements, identified in the Task Order.  Rather, Garzione's Amended Complaint only implies that at least three suppliers offered the same water and differed only in price. *See id.* ¶¶ 34, 71.  According to Garzione, in December 2014, PAE determined that Taylors could provide the bottled water over the long-term and increased the quantity of bottled water that Taylors already was supplying under the original task order. *Id.* ¶ 70, 75.

**E.      Garzione Files the Complaint and the United States Declines to Intervene**

On June 30, 2015, Garzione filed his Complaint with the District Court for the Eastern District of Virginia.  Compl. at 1.  Garzione alleged that PAE failed to issue the bottled water subcontract through a competitive process when it awarded the contract to Taylors, the highest-priced offeror.   On September 17, 2015, less than three months after Garzione filed his Complaint, the United States filed its Notice of Election to Decline Intervention.  Government's Notice of Election to Decline Intervention (attached as Ex. D).  On November 17, 2015, PAE filed a Motion to Dismiss Garzione's Complaint.  Rather than contest PAE's Motion to Dismiss, on December 8, 2015, Garzione filed an Amended Complaint.  Garzione alleges in his Amended Complaint that "[t]he $3.65 price per 12-pack . . . was objectively unreasonable and was not a

product of arms length negotiation," due to PAE's alleged failure to conduct the competition allegedly required by FAR 52.244-5.  Amend. Compl. ¶ 86.  Garzione asserts that this amounts to a violation of the FAR 52.244-5 requirement to select subcontractors on a "competitive basis to the maximum practical extent" which, in turn, he claims renders the $3.65 price per 12-pack "unreasonable" in alleged violation of FAR 31.201-2 and -3.[3]  *Id.* ¶¶ 86, 91.  Garzione further claims that "[i]n presenting claims to the Department of State . . . for payment for the bottled water for which Taylors had invoiced PAE, PAE falsely certified entitlement to pay under the Prime Contract, which required that the bottled water have a reasonable price."  *Id.* ¶ 87.  In sum, Garzione alleges that "PAE filed false [but unidentified] certifications that it competitively-sourced the bottled water procurement it granted to subcontractor Taylors and that the costs it charged the Department of State complied with FAR Part 31."  *Id.* ¶ 127.

Garzione's Amended Complaint does not identify any specific invoice or claim that PAE submitted to DOS for payment of the costs associated with the Taylors bottled water subcontract. Rather, Garzione generally alleges that PAE must have presented claims to DOS for Taylors' invoices for bottled water by the 10th of the months of October, November, and December because the BLiSS contract required submission of invoices within that time frame.  *Id.* ¶¶ 48, 84.  Because Garzione claims that Taylors price is approximately $13,000 higher per month than the next highest supplier, the amount of Garzione's claim based on actual invoices allegedly submitted is less than $40,000.  Garzione further contends "upon information and belief" that

---

[3] Under FAR 31.201-2 and -3, a cost must be "reasonable" to be allowable under a cost-reimbursement-type contract like PAE's contract with DOS.

PAE continued to submit invoices by the tenth of each month since November 2014.[4]  *Id.*

Garzione also fails to identify or explain when or how PAE allegedly certified its compliance

with FAR 52.244-5 or Part 31.  Garzione does not state that submission of the invoices required

certification with these clauses, or that certification was a condition of payment.  Despite not

identifying any specific claim submitted by PAE, Garzione alleges that over the course of the

four-year subcontract, the Government "*will* unnecessarily spend" anywhere between $600,000

and $10.2 million dollars on bottled water for BLiSS.  *Id.* ¶¶ 72, 73 (emphasis added).

## ARGUMENT

### I.  Counts I and II Must Be Dismissed Under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) "should be granted unless the complaint 'states

a [facially] plausible claim for relief.'"  *Young v. CHS Middle East, LLC*, No. 1:34-cv-000585-

GBL-JFA, 2013 WL 4498680, at *3 (E.D. Va. Aug. 20, 2013) (Lee, J.) (alteration in original;

citation omitted) *rev'd on other grounds*, 611 F.App'x 130 (4th Cir. 2015); *see also Ashcroft v.*

*Iqbal*, 556 U.S. 662, 679 (2009).  The complaint must contain sufficient factual allegations, if

taken as true, to raise the right to relief "above the speculative level" and "nudge [the] claims

across the line from conceivable to plausible." *Young*, 2013 WL 4498680, at *4 (alteration in

original, citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus,

to survive a Rule 12(b)(6) motion to dismiss, the complaint must allege sufficient non-

conclusory factual allegations to support a reasonable inference of the plaintiff's entitlement to

relief and the defendant's liability for the conduct alleged.  *Young*, 2013 WL 4498680, at *4.

---

[4] Since Garzione already alleged that PAE had submitted an invoice in December 2014, we
assume he meant that "upon information and belief" PAE continued to submit invoices after
December 2014.

To state a claim for FCA liability, a complaint must allege that "(1) there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a 'claim')." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 788 (4th Cir. 1999). Under the FCA, a defendant acts with the requisite scienter, i.e., he acts "knowingly," if he "(1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(a).

This court has stated that there are generally two theories relators assert to advance an FCA claim: fraudulent inducement and false certification. *McLain*, 2013 WL 710900, at *5. A claim for fraudulent inducement occurs "where one receives a government contract or benefit on the basis of false statements or conduct." *Id.* The Amended Complaint does not assert fraud in the inducement.

False certification FCA claims arise "where compliance with a statute or regulation is a prerequisite to obtaining payment and the defendant affirmatively certified the compliance." *Id.* A false certification can be either express or implied. *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 635 (4th Cir. 2015). "Courts infer implied certifications from silence where certification was a prerequisite to the government action sought." *Id.* at 636 (internal quotations omitted).

By not identifying any express statement by PAE to the Government that he alleges was false, Garzione is apparently relying upon an implied false certification theory of liability. *See* Amend. Compl. ¶¶ 48, 84. Garzione's theory fails as a matter of law. Garzione has failed to show: (1) that PAE committed any contractual or regulatory violation, let alone that it falsely

certified (either expressly or impliedly) that it was in compliance; (2) that PAE knowingly

submitted a false claim, given that PAE's interpretation of the relevant provisions is at the very

least reasonable; and (3) that compliance with FAR 52.244-5 was a condition of payment and

material to the contract.  Any of these failures is fatal to his claim.

### A.     Counts I and II Must Be Dismissed Because PAE Did Not Violate any Contractual or Regulatory Requirement

Garzione's Amended Complaint fails as a matter of law because, even assuming the pled

facts are true, PAE did not violate any contractual or regulatory requirements and therefore could

not have engaged in a fraudulent course of conduct.  In the Amended Complaint, Garzione

concedes that PAE solicited and received at least nine bids to supply bottled water.  Amend.

Compl. ¶¶ 29, 32.  However, Garzione alleges that PAE failed to follow the requirements of

FAR 52.244-5 for the "long-term contract" when it increased the quantity of bottled water that

Taylors was supplying rather than soliciting new bids, resulting in the award to Taylors at an

allegedly "unreasonably" high price.  *Id.* ¶¶ 29-38, 74, 83-86.[5]

Garzione's allegations misrepresent the requirements of FAR 52.244-5 and improperly

attempt to convert a violation of that provision into a violation of FAR 31.201-2 and -3 as well.

PAE fully complied with its contractual and regulatory obligations under the BLiSS Contract,

even assuming the facts as pled are true.

### 1.     PAE's Initial Award to Taylors Complied with FAR 52.244-5

PAE's initial award of the bottled water requirement to Taylors was fully compliant with

the BLiSS Contract.  FAR 52.244-5 requires that PAE "shall select subcontractors (including

---

[5] Garzione's "reasonableness" allegations are wholly derivative of his claim that PAE did not properly compete the bottled water contract because it did not award to a lower-priced offeror. Indeed, stated differently, Garzione's Amended Complaint alleges that the BLiSS Contract's requirement that subcontracts be competitively awarded "to the maximum extent practical" and that costs be reasonable could be satisfied *only* by awarding to the offeror with the lowest price.

suppliers) on a ***competitive basis to the maximum practical extent*** consistent with the objectives

and requirements of the contract," and it did so.   FAR 52.244-5(a) (emphasis added).   The phrase

"competitive basis" is not defined in the FAR.   However, the Court of Federal Claims and the

Federal Circuit have interpreted this same phrase in the context of a different statute and found

that awarding on a "competitive basis" requires only that the contractor solicit multiple offers,

which Garzione admits that PAE did.   Significantly, the requirement to procure on a

"competitive basis" does not equal the "full and open competition" requirement imposed by the

Competition in Contracting Act ("CICA").   *See Mgmt. & Training Corp. v. United States*, 118

Fed. Cl. 155, 165 (2013); *see also Res-Care, Inc. v. United States*, 735 F.3d 1384, 1388 (Fed.

Cir. 2013) (recognizing that "the 'full and open competition' phrase from CICA" differs from the

reference to "competitive basis" in the Workforce Investment Act ("WIA"), 29 U.S.C. § 2887).[6]

Instead, awarding a contract on a "'competitive basis' . . . refer[s] to ***any*** procedures

***involving consideration of at least two bids*** (i.e., ***all*** procedures that are not 'sole source')."   *See*

*Mgmt. & Training Corp.*, 118 Fed. Cl. at 165 (emphasis in original and added).   This

interpretation is consistent with the Black's Law Dictionary definition of "competition" as "the

effort or action of two or more commercial interests to obtain the same business from third

parties."   COMPETITION, Black's Law Dictionary (10th ed. 2014).

Furthermore, after soliciting multiple offers, a contractor is not required to award to the

lowest priced offeror.   Instead, courts have recognized that prime contractors may award

subcontracts on a competitive basis using a best value determination.   Indeed, the government

---

[6] These cases were interpreting the requirement in the WIA that the Department of Labor "shall
select on a competitive basis an entity to operate a Job Corps center."   *See* 29 U.S.C. §
2887(a)(1)(A).   The use of the phrase in the WIA in the context of selecting an entity to operate a
Job Corps center is significantly similar to its use in FAR 52.244-5 regarding selection of
subcontractors.

routinely utilizes a "best value" approach to procurement, which "permits tradeoffs among cost or price and non-cost factors and allows the Government to accept other than the lowest-priced proposal." *Carahsoft Tech. Corp. v. United States*, 86 Fed. Cl. 325, 348 (2009) (quoting FAR 15.101–1(c)).  PAE's selection of Taylors for the bottled water subcontract reflected a "best value approach that was done on a "competitive basis." *See Int'l Waste Indus. Corp. v. Cape Envtl. Mgmt., Inc.*, 988 F. Supp. 2d 542, 557-58 (D. Md. 2013), *aff'd*, 588 F. App'x 213 (4th Cir. 2014) (noting that the prime contractor's decision to award the contract in its "sole discretion [to the subcontractor that] offers the best value" was a "competitive" process).  This concept and these cases therefore contradict Garzione's claim that Taylors could not have been the best value based solely on its price.

While Garzione has alleged that other suppliers offered a cheaper price, he has not alleged that those suppliers could provide water that met the required quality and safety standards or could conduct the necessary testing.  In other words, the water offered by other, lower-priced bids, was not necessarily identical to the water offered by Taylors and therefore not necessarily the best value.  Contrary to Garzione's claims, price was not the only factor that mattered for the bottled water.

PAE's obligation under FAR 52.244-5 to select subcontractors on a competitive basis required only that it solicit multiple offers for the bottled water procurement.  PAE did just that, as Garzione admits.  PAE issued a solicitation for bottled water and received bids from at least nine suppliers.  Amend. Compl. ¶¶ 29-31.  At that point, PAE had fulfilled its obligations under FAR 52.244-5.  *See Mgmt. & Training Corp.*, 118 Fed. Cl. at 165.  Its selection of Taylors based on a best value determination also was done on a competitive basis.  Any express or implied certification of compliance with that provision therefore could not have been false.

2.      PAE's Increase in the Quantity of Bottled Water Supplied by Taylors Was Within the Scope of Taylors' Contract and Did Not Require A New Competition

PAE's decision to increase the quantity of bottled water it ordered from Taylors after the initial Notice to Proceed, rather than solicit additional bids, also complied with FAR 52.244-5. PAE had no obligation to seek multiple offers again and conduct a competition where it simply was modifying Taylors' original award to order more bottled water.  The initial task order from the DOS did not set a maximum amount of bottled water that PAE had to provide.  Ex. B, Task Order SAQMMA14F0721, Mod. 4.  Garzione alleged only that PAE issued a request for bids for "4,000 bottles of water for testing from potential subcontractors interested in winning the subcontract to provide the water the Defense Logistics Agency had previously supplied." Compl. ¶ 29.  Significantly, Garzione did not allege that the 4,000 bottles of water in PAE's request for bids was a maximum amount.  Nor did Garzione allege that PAE informed offerors that it would issue a subsequent request for bids for a future, longer-term contract.  In fact, Garzione admits that the request for bids was for subcontractors "interested in winning the subcontract to **provide the water the Defense Logistics Agency had previously supplied**," implying that the request was not limited and would cover the entire requirement for bottled water.  *Id.* (emphasis added).

Accordingly, PAE's decision to increase the quantity of bottled water that Taylors' already was supplying was fully consistent with PAE's initial request for bids and was well within the scope of the task order.  Indeed, the Court of Federal Claims has held that modifications to an existing award that simply increase the quantity ordered at the same unit price do not require the government to conduct a new competition for the increased quantity. *See Ceradyne, Inc. v. United States*, 103 Fed. Cl. 1, 14 (2012) (no material departure from scope of contract and therefore no requirement for a new competition where order for additional body

armor plates at the same unit price did not alter the terms of the original procurement).  Even if

Garzione's claims that in doing this PAE awarded Taylors a "long-term contract" were true,

nothing prevented PAE from increasing the quantity it was ordering from Taylors or required

PAE to recompete the requirement after it already had determined that Taylors was the best

value.

3.     PAE's Cost for Bottled Water Was Reasonable

PAE's competition for the bottled water subcontract confirmed that Taylors price was

reasonable.  FAR 31.201-3 sets forth the criteria to determine reasonableness and states that a

cost is reasonable if "it does not exceed that which would be incurred by a prudent person in the

conduct of competitive business."  FAR 31.201-3(a).  Other criteria to determine reasonableness

include whether it was the result of "arm's-length bargaining" and sound business practices.  *Id.*

Consistent with these criteria, the FAR explicitly states that "adequate price competition

establishes a fair and reasonable price."[7]  FAR 15.404-1(b)(2)(i); *see also Afghan Am. Army*

*Servs. Corp. v. United States*, 90 Fed. Cl. 341, 355 (2009).  Thus, because PAE complied with

the requirements of FAR 52.244-5, it *ipso facto* met any requirements imposed by FAR 31.201-2

and -3 regarding reasonableness.[8]  PAE's cost for bottled water was therefore reasonable and

---

[7] Adequate price competition occurs where two or more responsible offerors competing independently submit priced offers satisfying the expressed requirement, and award will be made to the offeror who provides the best value proposal and there is no finding that the price of the successful offeror is unreasonable.  FAR 15.401-3(c)(1).

[8] Garzione appears to suggest that this transaction was done at less than arm's-length because Taylors allegedly receives "advantages" from PAE, such as being able to bill a fixed rate for travel costs.  Amend. Compl. ¶¶ 76-80.  Even if the travel cost arrangement were true, there is nothing improper about Taylors and PAE negotiating a fixed rate for travel under Taylors' subcontract, and these allegations fall far short (even if true) of demonstrating a lack of arms-length bargaining for the water subcontract at issue here.  Furthermore, there is nothing more to be gleaned from these allegations because Garzione does not allege that PAE passed this cost along to the Government.  *See id.*

13

PAE did not violate the contract or falsely certify its compliance with any regulation or contractual provision.

> **B.      Counts I and II Must Be Dismissed Because PAE Did Not Have the Requisite Scienter**

Garzione fails to state an FCA claim because PAE's interpretation of FAR 52.244-5 and FAR Part 31 is at least reasonable (indeed, it is correct, as demonstrated above), and Garzione cannot show that PAE knowingly violated any of these clauses.  To satisfy the first element of an FCA claim, "the statement or conduct alleged must represent an objective falsehood." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).  Indeed, "[a]n FCA relator cannot base a fraud claim on nothing more than his own interpretation of an imprecise contractual provision." *Id.* at 378; *see also U.S. ex rel. Davis v. Prince*, No. 1:08CV1244, 2011 WL 2749188, at *7 (E.D. Va. July 13, 2011) (finding that "vague contractual requirement cannot serve as the basis for an FCA claim") *aff'd sub nom. United States ex rel. Davis v. U.S. Training Ctr. Inc.*, 498 F. App'x 308 (4th Cir. 2012).   Moreover, there is no knowing submission of a false claim, and therefore no scienter, in those circumstances.  *See United States ex rel. Siewick v. Jamieson Sci. and Eng'g, Inc.*, 214 F.3d 1372, 1378 (D.C. Cir. 2000) (explaining that when an alleged statutory violation was unclear, the relator fails to establish a knowing violation of the FCA because "there is only legal argumentation and possibility").

FAR 52.244-5 requires that PAE "shall select subcontractors (including suppliers) on a ***competitive basis to the maximum practical extent*** consistent with the objectives and requirements of the contract."  FAR 52.244-5(a) (emphasis added).  The term "competitive basis" is not defined in the FAR, and FAR 52.244-5 does not provide any guidance on how a

prime contractor is to comply with its requirements.  Moreover, there is no case law expressly addressing the requirements of FAR 52.244-5.

The standard for cost reasonableness under FAR 31.201-2 and 31.201-3 depends on a variety of factors.  *See* FAR 31.201-3.  Courts have acknowledged this, and the exact contours of "cost reasonableness" have not been clearly defined in case law.  *See, e.g.*, *Kellogg Brown & Root Servs., Inc. v. United States*, 728 F.3d 1348, 1358-63 (Fed. Cir. 2013) (discussing various considerations to determine whether a cost is reasonable but electing not to establish a clear test); *Kellogg Brown & Root Servs., Inc. v. United States*, 742 F.3d 967, 970-72 (Fed. Cir. 2014) (same).

Thus, PAE's exact obligations under FAR 52.244-5 and Far Part 31 are, at the very least, not entirely clear and potentially are open to more than one interpretation.[9]  For this reason, Garzione's Amended Complaint must fail because he cannot base a fraud claim on his own interpretation of imprecise contractual requirements.

In this case, Garzione uses his own interpretation of the requirements stated in FAR 52.244-5 to misstate what is required for a contractor to select a subcontractor "on a competitive basis to the maximum practical extent."  Garzione alleges that FAR 52.244-5 required PAE to recompete the bottled water procurement for the longer-term contract because Taylors' price was allegedly higher than other offerors.  Compl. ¶¶ 42, 52, 74.  However, the FAR does not say that, and PAE's interpretation of FAR 52.244-5 and its decision to award the subcontract to Taylors and then increase the quantity of bottled water Taylors was supplying is, at the very least,

---

[9] As demonstrated above, however, not only is PAE's position regarding FAR 52.244-5, 31.201-2 and 31.201-3 reasonable, it also is correct.  The Court need not, however, decide that PAE's interpretation is the correct one to grant PAE's motion to dismiss Counts I and II.  It is sufficient for the Court to find PAE's position is reasonable.

reasonable.  PAE's interpretation that FAR 52.244-5 requires only the solicitation and receipt of offers from more than one supplier is supported both by decisions from the Court of Federal Claims and the Federal Circuit interpreting the phrase "competitive basis" (albeit in the context of a different statute) and by the definition of "competition."  *See See Mgmt. & Training Corp.*, 118 Fed. Cl. at 165; *see also Res-Care, Inc.*, 735 F.3d at 1388.  And its decision to increase the quantity of bottled water ordered from Taylors is consistent with the finding that there is no need for a new competition where the government increased the quantity it ordered from a contractor under an existing contract.  *See Ceradyne, Inc.*, 103 Fed. Cl. at 14.  On the other hand, Garzione's interpretation assumes the FAR clause requires award based exclusively on price, and would require an entirely new competition for an increase in quantity, neither of which are mentioned in FAR 52.244-5.

Garzione's argument regarding cost reasonableness is entirely dependent on his allegations that PAE did not competitively award the bottled water requirement because it awarded to the allegedly highest-priced offeror.  According to Garzione, Taylors' price cannot be reasonable because it allegedly is the highest price.[10]  Amend. Compl. ¶¶ 83, 86.  But as explained above, Taylors' price was one of nine bids and was the result of adequate price competition.  Indeed, one supplier proposed a price per 12-pack of bottled water that was only $0.05 less than Taylors, and Garzione deemed that price reasonable.  *Id.* ¶ 52.  Furthermore, Garzione's claim ignores the fact that while Taylors offered a higher price, it provided the best value to PAE and that ultimately was the reason why Taylors was awarded the contract.  *Id.* ¶ 41.

---

[10] And, as discussed above, Taylors' price cannot even be said to have been higher than other suppliers' prices, because Garzione has not alleged that the bottled water in each of the other bids was identical and met the safety and quality standards required by the government.

In light of the initial competition for the bottled water and its determination that Taylors was "best suited" to provide the bottled water, PAE's conclusion that Taylors' price was a reasonable cost under FAR 31.201-2 or 31.201-3 is at least reasonable (and therefore cannot establish that a claim was false).  Its interpretation of these clauses is supported by another clause in the FAR that explicitly states that "adequate price competition establishes a fair and reasonable price."  FAR 15.404-1(b)(2)(i).  Furthermore, PAE's decision to increase the quantity of bottled water it ordered from Taylors at the same unit price per 12-pack also is reasonable and supported by the Court of Federal Claim's interpretation of the government's obligations when it orders an increased quantity of an item at the same unit price under an existing contract.  *See Ceradyne, Inc.*, 103 Fed. Cl. at 14.

Garzione's allegations regarding FAR 52.244-5, 32.201-2, and 31.201-3 are based on his subjective view of a contractual requirement, but there is no objective falsehood.  As a consequence, he does not state an FCA claim based on the violation of FAR 31.201-2 and -3. *See Wilson*, 525 F.3d at 376-77; *Davis*, 2011 WL 2749188 at *7.  PAE's  interpretation of the requirements of these regulations is at least reasonable, and therefore PAE lacks the requisite scienter to knowingly submit a false claim.  *Siewick*, 214 F.3d at 1378.  Accordingly, this Court should dismiss Counts I and II because the Complaint fails to establish the first two elements of an FCA claim.

### C.   Counts I and II Fail to State an FCA Claim Because PAE's Compliance with FAR 52.244-5 Was Not Material to the Contract

In order for Garzione to state a claim for implied false certification, he also must allege facts sufficient to support the finding that compliance with the contractual and regulatory provisions in question was a prerequisite to obtaining payment.  *See*, *e.g.*, *United States ex rel. Carter v. Halliburton Co.*, No. 1:08cv1162 JCC, 2009 WL 2240331, at *13 (E.D. Va. July 23,

2009) (dismissing relator's FCA claim under Rule 12(b)(6) because the relator made "no allegations regarding whether the Government's payments to Defendants were conditioned upon a certification of compliance"). Compliance with a contractual or regulatory provision typically is a prerequisite to obtaining payment "when the underlying statute or regulation upon which the plaintiff relies expressly states the [contractor] must comply in order to be paid." *United States ex rel. Mikes v. Straus*, 274 F.3d 687, 700 (2d Cir. 2001); see also *McLain v. KBR, Inc.*, No. 1:08-CV-499 GBL/TCB, 2014 WL 3101818, at *5 (E.D. Va. July 7, 2014) aff'd, 612 F. App'x 187 (4th Cir. 2015).[11]  Neither the regulation nor the contract at issue here expressly states that compliance with FAR 52.244-5, the provision in question here, is a condition of payment.

Without an express statement that compliance with FAR 52.244-5 is a condition of payment, it is "difficult" for Garzione to make out an FCA case against PAE here, as the Fourth Circuit has acknowledged. *Triple Canopy*, 775 F.3d at 637 n.5.  To prove that the FCA violation was "knowing," the relator "must establish that both the contractor and the Government understood that the violation of a particular contractual provision would foreclose payment." *Id.* And "because the violation [of a contractual provision] *must be material*, not every part of a contract can be assumed, as a matter of law, to provide a condition of payment." *Id.* (emphasis added).  Indeed, a simple failure to meet a contractual requirement is not sufficient to establish

---

[11] In *Triple Canopy*, the Fourth Circuit recognized an FCA claim based on an implied false certification where the provision at issue was not expressly designated as a condition of payment. *Triple Canopy, Inc.*, 775 F.3d at 637 n.5. On June 5, 2015, the defendants in *Triple Canopy* filed a petition for writ of certiorari at the Supreme Court which is still pending as of the date this motion was filed. If the Supreme Court reverses the Fourth Circuit's ruling in *Triple Canopy* and finds that implied certification of compliance with a provision that is not an express condition of payment is not a legitimate theory of FCA liability, this decision will require entry of judgment for PAE. Given the pending petition for certiorari, this court should not rely on the Fourth Circuit's analysis of the express-condition-of-payment requirement in *Triple Canopy*.

FCA liability. *United States ex rel. Searle v. DRS Servs., Inc.*, 1:14-cv-00402, 2015 WL 6691973, at *12 (E.D. Va. Nov. 2, 2015).

FAR 52.244-5 is not a material contractual requirement. Garzione mechanically claims that compliance with FAR 52.244-5 is material because "it has a natural tendency to influence the Government to pay for the procurement by encouraging the Government to believe the bottled water was as cheap as possible while meeting the procurement's standards." Amend. Compl. ¶ 94.  But this allegation just parrots back standard language found in FCA cases and fails to assert that both PAE and DOS understood that violation of FAR 52.244-5 would preclude payment.  Furthermore, the allegation misstates PAE's obligations under FAR 52.244-5 as requiring procurement of the cheapest bottled water available.  Indeed, even the plain language of FAR 52.244-5 limits PAE's obligations to conduct a competitive award to "the maximum practical extent."  Such a limited obligation supports a finding that FAR 52.2445 cannot be a material provision of the contract.[12]  And because Garzione's allegations regarding FAR Part 31 turn completely on PAE's compliance with FAR 52.244-5, Garzione cannot separately rely on FAR Part 31 to establish a condition of payment or materiality.

Thus, even under the materiality standard set forth in Triple Canopy, compliance with FAR 52.244-5 is not a condition of payment.  The Court should dismiss Counts I and II.

---

[12] Furthermore, according to the invoices that Garzione alleges PAE has actually submitted, Taylors' higher price resulted in the Government being charged only approximately $38,000 more than if PAE had selected another supplier. *See* Amend. Compl. ¶¶ 48, 71.  PAE received no benefit from awarding the subcontract to Taylors because it simply passed the payment from the Government along to Taylors and, in a contract worth hundreds of millions of dollars, has no reason to improperly award to Taylors for such an insignificant amount.

## II.      Counts I and II Must Be Dismissed Under Rule 9(b)

As shown above, Garzione's Complaint cannot survive a challenge under Federal Rule of

Civil Procedure 12(b)(6).  Separately and independently from Garzione's failure to state a claim,

his FCA claim cannot satisfy Rule 9(b), which requires that "[i]n alleging fraud or mistake, a

party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ.

P. 9(b).  The circumstances to be pled with particularity are the "time, place, and contents of the

false representations, as well as the identity of the person making the misrepresentation and what

he obtained thereby."  *Harrison*, 176 F.3d at 784 (internal quotations omitted).  This "typically

entails the who, what, when, where and how of the alleged fraud."  *McLain*, 2013 WL 710900, at

*8 (internal quotations omitted); *see also Carlucci v. Han*, 886 F. Supp. 2d 497, 527 (E.D. Va.

2012) (A plaintiff asserting . . . fraud must demonstrate "(1) a false representation by the

defendant, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to

mislead, (5) reliance by the misled party, and (6) resulting injury to the party misled.").

Moreover, "'[i]t is well settled that a misrepresentation, the falsity of which will afford

ground for an action for damages, must be of existing fact, and not the mere expression of an

opinion.'"  *Parkman v. Elam*, No. 3:08-CV-690, 2009 WL 736067, at *3 (E.D. Va. Mar. 17,

2009) (quoting *Cohn v. Knowledge Connections, Inc.*, 585 S.E.2d 578, 582 (Va. 2003)).  "In

order to survive a motion to dismiss, Plaintiffs must 'plead, with the requisite degree of

particularity, facts which support all the elements of a cause of action for'" fraud.  *Id.* (quoting

*Mortarino v. Consultant Eng'g Servs., Inc.*, 467 S.E.2d 778, 782 (Va. 1996)).  In pleading fraud,

a plaintiff "cannot rely on the fact that [it] did not receive the result [it] expected."  *Id.* at *4.

Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)).

This Court has held that a complaint that fails to connect a false report or fraudulent action with payment does not meet the minimum standards of Rule 9(b). *McLain*, 2013 WL 710900, at \*8. In addition, a failure to allege any specific transaction between the defendant and the government or identify a transaction that materially relied upon the alleged fraudulent action will not satisfy Rule 9(b). *Id.* at \*8-9. In *McLain*, this Court noted that "[t]here is a significant difference between pleading the *details* of a false claim and pleading the facts to infer the *existence* of a false claim." *Id.* at \*10. Consistent with this distinction, the fraudulent scheme described must be of the claims process and not the underlying fraudulent act. *Id.* Where the relator "fails to identify a single false claim or some details of a scheme that touches upon and affects the claims process, the Complaint fails to comply with Rule 9(b)." *Id.*

Here, the Amended Complaint utterly fails to identify the actual time, place, and contents of *any* false representation. Relying on the BLiSS Contract clause that set forth the timing for submission of invoices, Garzione alleges that PAE must have submitted invoices to the Government pursuant to this clause. Amend. Compl. ¶¶ 48, 83. According to Garzione, this meant that PAE must have submitted invoices somewhere between the 1st and 10th of each of the months of October, November, and December, and "upon information and belief," likely beyond those months. *Id.* But these assumptions regarding the possible *timing* of PAE's submission of invoices do not identify a *specific* invoice or claim that contained costs for Taylors' bottled water subcontract or how such an invoice or claim indicated compliance with 52.244-5, 31.201-2 or 31.201-3.[13] Nor does the Complaint identify a specific transaction that established the alleged fraud.

---

[13] Furthermore, Garzione states that invoices were required to be submitted by the 10th of each month. Amend. Compl. ¶ 20. Under the BLiSS Contract, however, invoices were due **within 30** (continued…)

The Complaint further claims that "[i]n presenting claims to the Department of State . . . for payment for the bottled water for which Taylors had invoiced PAE, PAE falsely certified entitlement to pay under the Prime Contract, which required that the bottled water have a reasonable price," *id.* ¶ 87, and that "[i]n refusing to select the bottled water subcontractor on a competitive basis, PAE knowingly presented a false claim to the Department of State." *Id.* ¶ 92. But, aside from the reference to undefined invoices that Garzione assumes PAE submitted, there is no description of what PAE submitted or presented to certify that the bottled water subcontract complied with PAE's contractual obligations. Furthermore, the Complaint does not allege how PAE submitted the alleged false claims. The Complaint's references to various, undefined invoices or claims for payment do not provide the particulars required for a fraud claim.[14]

In short, the Complaint falls woefully short of establishing the "who, what, when, where and how of the alleged fraud." *McLain*, 2013 WL 710900, at *8. Much like the relator in *McLain*, Garzione has failed to identify a single, specific false claim or provide any details on a scheme that affects the claims process and has instead focused on the underlying allegedly fraudulent act. Accordingly Garzione has failed to allege sufficient facts to satisfy Rule 9(b) and this Court should dismiss Counts I and II.

---

***days*** after the end of the billing month. Ex. A, BLiSS Contract § G.5 at 39 (excerpt). That Garzione apparently does not even know *when* the invoices were submitted, let alone *which* specific invoices were submitted further proves that he cannot establish fraud with the requisite particularity.

[14] Similarly, the allegation that over the course of the four-year subcontract, the Government will "unnecessarily spend" an additional $600,000 or $10.2 million dollars on bottled water, Amend. Compl. ¶ 36, refers to future, yet-to-be submitted claims and does not provide the necessary detail for a fraud claim. In fact, there can be no FCA liability for claims that have not been submitted, and a claim for *future* payments necessarily means that the Government has not paid anything and that *no claim has been submitted*. *See McLain*, 2013 WL 710900, at *6 ("[T]he presence of a claim [is] the ***central question*** in an FCA case.") (emphasis in original).

### III.    Count III Must Be Dismissed for Failure to State a Claim

To state a claim for retaliation under the FCA, Garzione must allege (1) that he engaged in "protected activity" by acting in furtherance of a qui tam suit; (2) that his employer knew of these acts; and (3) that his employer took adverse action against him as a result of these acts. *Glynn v. EDO Corp.*, 710 F.3d 209, 214 (4th Cir. 2013).  The relator's purported whistleblowing activity "must concern 'false or fraudulent claims,' or it is not protected activity under the FCA." *Glynn*, 710 F.3d at 214; *Dillon v. SAIC, Inc.*, No. 1-12-CV-390, 2013 WL 324062, at *5 (E.D. Va. Jan. 28, 2013) (explaining that raising "concerns or suggestions . . . cannot be considered a protected activity" under the FCA, while a "threat or warning[] of FCA litigation" is sufficient to constitute protected activity).  Simply reporting a concern regarding alleged misconduct does not establish that the relator is acting in furtherance of a qui tam action. *Lee v. Computer Scis. Corp.*, No. 1:14CV581 JCC/TCB, 2015 WL 778995, at *6 (E.D. Va. Feb. 24, 2015).

In *Lee*, this Court held that a relator had not engaged in protected activity because he was not acting in furtherance of an FCA lawsuit.  While the plaintiff informed his supervisor of certain problems he had observed, this "d[id] not suffice to establish that [Plaintiff] was acting in furtherance of a qui tam action." *Lee*, 2015 WL 778995, at *6 (internal quotations and citations omitted).

The same analysis applies here.  Garzione claims that he engaged in protected activity because he undertook an investigation for a potential action under the FCA and attempted to stop a violation of the FCA.  However, these broad claims, even if true, do not constitute protected activity because Garzione did not raise any complaints or concerns to PAE about any specific false claims or threaten to file an FCA claim.  Rather, Garzione claims that he raised concerns about "breaches of bid protocol" or that PAE "violated . . . contractual provisions." Amend. Compl. ¶¶ 58, 112, 118.  This did not alert PAE to a specific false claim.  In fact, Garzione does

not even allege that he discussed a specific false claim with PAE and instead asserts broad, conclusory statements regarding his purported protected activity.  At most, Garzione's complaints that PAE awarded the bottled water subcontract to Taylors when there were other bidders that allegedly had lower-priced offers amount to complaints to his supervisors about his concerns with the procurement, which is not sufficient to establish that Garzione was acting in furtherance of an FCA action.  *Lee*, 2015 WL 778995, at *6.

To satisfy the second element of a retaliation claim, Garzione would have to show that PAE was aware of his conduct and believed that he was acting in furtherance of an FCA action. *See United States ex rel. Parks v. Alpharma, Inc.*, 493 F. App'x 380, 388 (4th Cir. 2012).  PAE must know that Garzione's acts raise the reasonable possibility of an FCA action.  *Layman v. Met. Labs., Inc.*, No. RDB-11-03139, 2012 WL 4018033, at *5 (D. Md. Sept. 12, 2012); *see also Parks*, 493 AF. App'x at 388 (noting that complaints "couched in terms of concerns and suggestions, [but] not threats or warnings of FCA litigation" do not satisfy the second element).

Here, Garzione admits that he did not use the word "fraud" in raising his concerns with his supervisors.  Amend. Compl. ¶ 118.  Rather, he alleges generally that PAE somehow knew or should have known that his activities and investigation were in connection with a potential FCA action but does not explain why that is the case.  Contrary to these allegations, none of Garzione's complaints regarding the bottled water procurement raised any threat or warning of FCA litigation.  Furthermore, because PAE conducted the bottled water procurement in accordance with the requirements of FAR 52.244-5, and appropriately determined that the cost was reasonable under Far Part 31, it could not have known that Garzione had been acting in furtherance of an FCA action.  At best, Garzione's complaints signified his disagreement with PAE's decision to award the subcontract to Taylors, but this was not an indication that PAE

should have been on notice of a FCA action.  Because Garzione failed to allege facts satisfying

the first and second elements of a retaliation claim, this Court should dismiss Count III.

## CONCLUSION

For all the foregoing reasons, Garzione's Amended Complaint should be dismissed with

prejudice.

Dated: December 28, 2015

Respectfully submitted,

/s/ Jason N. Workmaster
Jason N. Workmaster (VSB No. 46011)
Steven A. Shaw
John W. Sorrenti
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5412
Fax: (202) 778-5412
jworkmaster@cov.com

*Counsel for PAE Government Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2015, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to the following:

Jack B. Jarrett
The Spiggle Law Firm
4830 31st Street S., Ste. B
Arlington, VA 22206
Tel: (202) 602-6831
jjarrett@spigglelaw.com

*Counsel for Plaintiff Anthony Garzione*

Richard W. Sponseller
Assistant United States Attorney
United States Attorney's Office
Justin W. Williams United States Attorney's Building
2100 Jamieson Avenue
Alexandria, VA 22314
Tel: (703) 299-3700, ext. 3749
Fax: (703) 299-3898
Richard.sponseller@usdoj.gov

*Counsel for United States of America*

/s/ Jason N. Workmaster
Jason N. Workmaster (VSB No. 46011)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5412
Fax: (202) 778-5412
jworkmaster@cov.com

*Counsel for PAE Government Services, Inc.*