IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ANTHONY GARZIONE, <br><br> Plaintiff, <br><br> v. <br><br> PAE GOVERNMENT SERVICES, INC., <br><br> Defendant. | Civil Action No. 1:15-cv-833 (AJT/JFA) |

### **MEMORANDUM OPINION**

In this False Claims Act ("FCA") case, relator plaintiff Anthony Garzione alleges that defendant PAE Government Services, Inc. ("PAE") intentionally overcharged the United States Department of State ("DOS" or the "Government") for bottled water supplied to various facilities in Iraq, then terminated plaintiff in retaliation for questioning the propriety of the subcontractor selection process. PAE moves to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) on the grounds that, as alleged, it did not violate the FCA as a matter of law and that plaintiff's investigation concerning the bidding process did not constitute protected activity. For the reasons stated below, the Motion to Dismiss will be granted.

### I. BACKGROUND

Unless otherwise noted, the following facts are as alleged in plaintiff's Amended Complaint [Doc. No. 15] ("Compl.").

At all material times herein, plaintiff was employed at PAE as a Program Subcontracts Manager. In July 2013, DOS awarded PAE an "indefinite-delivery, indefinite quantity" Prime Contract known as "SAQMMA-13-D-0120" (the "Prime Contract"). Under the Prime Contract, PAE was to provide "life support and logistical function" at various DOS sites in Iraq, including

embassies, consulates, and Government encampments. Compl. ¶¶ 7-8. Specifically, its contractual responsibilities included "the procurement of food and supplies, storage, preparation, serving, and cleaning of food facilities, among other life support and logistical duties." *Id.* ¶ 10. PAE selected Taylors International Services, Inc. ("Taylors") as the subcontractor to provide food supplies in support of a program called "BAGHDAD LiFE SUPPORT SERVICES ("BLiSS") under section B.7 of the Prime Contract. *Id.* ¶ 22. Under its originally awarded subcontract, Taylors provided a relatively small quantity of bottled water as part of its provision of food services. *Id.* ¶ 23. However, from July 2013 until July 2014, the Department of Defense's Defense Logistics Agency ("DLA") provided most of the bottled water to the Government for use at the facilities in Iraq. *Id.* ¶ 24.

During the summer of 2014, DLA announced that it would cease providing bottled water for the Iraqi sites after December 31, 2014. *Id.* ¶ 25. Following that announcement, the Government issued a Task Order or contract modification under the Prime Contract for PAE to provide any required bottled water not supplied by DLA and specified minimum standards for the bottled water. *Id.* ¶¶ 26-28. Around July or August 2014, PAE issued a request for bid proposals for a limited supply of 4,000 bottles of water for quality testing from potential subcontractors interested in obtaining the subcontract to provide the bottled water previously supplied by DLA. *Id.* ¶ 29. Plaintiff was not involved in issuing this request for bids. *Id.* ¶ 30. However, "in July or August [he] was asked by Taylors's [*sic*] representatives what became of the bidding process," then thereafter "investigated bottled water supplier options" and "reviewed the bids to supply the 4,000 bottles of water from nine or so potential suppliers." *Id.* ¶¶ 30-33. Those bids included a quoted price from Taylors of $3.65 per case of "Pearl brand water," a

quoted price from Pearl itself of $3.50 per case,[1] and a quoted price from AWI of $1.18 per case. *Id.* ¶ 34.

In September 2014, PAE "submitted a response to the DOS' Task Order [to PAE] naming Taylors as the subcontractor that would supply bottled water." *Id.* ¶ 43. PAE also issued a "Notice to Proceed" to Taylors for the procurement of bottled water through the end of November 2014, without a specified amount. *Id.* ¶ 38; *see also* [Doc. No. 19, Ex. C]. Taylors provided bottled water under the Prime Contract in September, October, and November 2014; Taylors billed PAE for the bottled water at $3.65 per case, and accordingly PAE filed claims with the Government for the bottled water. Compl. ¶¶ 46, 48.

Plaintiff questioned PAE supervisors about Taylors' selection given that its quoted price was higher than that offered by the other suppliers and was told that "Taylors was simply best suited to receive the contract." *Id.* ¶¶ 40-41. Thereafter, and despite PAE's already-issued subcontract award to Taylors, plaintiff "informed his supervisor that he intended to reissue the competition for bottled water suppliers for the longer term contract that would apply after November 2014." *Id.* ¶ 42. Towards that end, he inquired as to the feasibility of adding Pearl as a subcontractor and continued soliciting bottled water bids in Fall 2014 for the longer term contract that would cover the period after November 2014, anticipated to last for up to four years, with additional option years. *Id.* ¶¶ 50, 52, 55, 70. On December 2, 2014, plaintiff arranged to have another vendor, AWI, deliver water for testing and on December 3, 2014 issued a Notice to Proceed to Taylors to test the water supplied by AWI. *Id.* ¶¶ 66-67. At this point,

---

[1] Paragraph 34 of the Complaint alleges that in "July or August 2014" Pearl originally quoted PAE with a price of $3.50 per case of bottled water. Paragraph 52 alleges that Pearl's quoted price in October 2014 was $3.60 per case. It is unclear from the Amended Complaint whether Pearl indeed quoted a higher price in October 2014 than in "July or August 2014."

PAE supervisors intervened and confirmed that Taylors had been selected to supply the bottled water for the period after November 2014 as well. *Id.* ¶ 70.

Throughout the fall of 2014, plaintiff expressed concerns over Taylors' selection because of its price relative to other bidders. He understood, however, that "PAE had awarded the contract through November 30 under pressure to fill the void left by the Defense Logistics Agency stopping deliveries and accordingly, Taylors had been selected since they were the primary subcontractor providing food services." Compl. ¶¶ 40, 58-60, 65, 69. Plaintiff's supervisors originally indicated that they understood his concerns and goals, but by November 2014, they "began treating Garzione with extreme hostility." *Id.* ¶¶ 61, 100-25. Specifically, PAE's Director of Iraq Operations told plaintiff to "not interfere with the bottled water contract or other contracts." *Id.* ¶ 119. Plaintiff "reported this abusive behavior to PAE supervisors, but they refused to address it." *Id.* ¶ 121. Meanwhile, plaintiff continued to solicit other subcontractors for the post-2014 contract period, and "complain[] to his supervisors" only to be "ignored." *Id.* ¶ 69. After plaintiff "repeatedly" questioned his supervisors about the Taylors subcontract, expressed concern as to the price of bottled water under that subcontract, and solicited other bids, he was treated in a hostile manner at work, "exclude[d] . . . from meetings and communications," had his responsibilities removed, and was finally terminated in February 2015, purportedly based on internal performance reviews. *Id.* ¶¶ 112-25.

Plaintiff originally filed his Complaint on June 30, 2015 [Doc. No. 1] and amended it on December 8, 2015 [Doc. No. 15].[2] In essence, and as discussed below, plaintiff claims that PAE

---

[2] Pursuant to 31 U.S.C. § 3730(b)(2), this action was initially filed under seal while the Government considered whether to intervene. On September 17, 2015, the Government filed a "Notice of Election to Decline Intervention" [Doc. No. 2] and accordingly on September 18, 2015, the Court unsealed the case [Doc. No. 3]. On November 17, 2015, defendant filed a Motion to Dismiss [Doc. No. 6], in response to which plaintiff filed his Amended Complaint on

4

violated the FCA when it filed claims for payment under the Prime Contract that included requests for payment of costs incurred for bottled water supplied by Taylors and also when it terminated him after questioning Taylors' selection.

## II. STANDARD OF REVIEW

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) should be granted unless the complaint "state[s] a claim to relief that is plausible on its face." *United States v. Triple Canopy*, 775 F.3d 628, 634 (4th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). This "requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

In considering a Rule 12(b)(6) motion, the Court must construe the complaint, read as a whole, in the light most favorable to the plaintiff and take the facts asserted therein as true. *LeSueur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012). In addition to the complaint, the Court may also examine documents "attached to the motion to dismiss, so long as they are integral to the complaint." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

The general pleading standard requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . [and that] give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 188 (4th Cir. 2007) (internal quotations omitted); *see also* Fed. R. Civ. P. 8(a)(2). *Twombly* established that the "plain statement" must "possess enough heft"—that is, "factual matter"—to set forth grounds for the plaintiff's entitlement to relief "that is plausible on

---

December 8, 2015 [Doc. No. 15]. On December 28, 2015, defendant filed its Motion to Dismiss the Amended Complaint [Doc. No. 18].

5

its face." 550 U.S. at 557, 570. The complaint must contain sufficient factual allegations that, taken as true, "raise a right to relief above the speculative level" and "across the line from conceivable to plausible." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (internal citations and quotations omitted). Put another way, the facial plausibility standard requires pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 287 (4th Cir. 2012) (internal quotations omitted). "A pleading that offers labels and conclusions[,] a formulaic recitation of the elements of a cause of action . . . [or] naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678.

Thus the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Walker v. Prince George's Cty., Md.*, 575 F.3d 426, 431 (4th Cir. 2009) (citations omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Accordingly, in order to survive a Rule 12(b)(6) motion to dismiss, the complaint must present sufficient non-conclusory factual allegations to support reasonable inferences of the plaintiff's entitlement to relief and the defendant's liability for the unlawful act or omission alleged. *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (citations omitted).

### III. ANALYSIS

In his three-count Amended Complaint, plaintiff alleges in Count I, the presentation of a false claim in violation of 31 U.S.C. §§ 3729(a)(1) and (a)(1)(A) (Compl. ¶¶ 126-30); in Count II, the making or using of false records or statements to cause a claim to be paid in violation of 31 U.S.C. §§ 3729(a)(1) and (a)(1)(A) (*id.* ¶¶ 131-32); and in Count III, retaliation in violation of 31 U.S.C. §§ 3729-33 (*id.* ¶¶ 133-41). Briefly summarized, plaintiff claims in Counts I and II

that PAE filed false claims when it "falsely certified" that it had complied with the requirements of the Prime Contract and Federal Acquisition Regulations to seek payment of only "reasonable" prices. That claim is based on the legal theory that PAE's costs for bottled water were necessarily not "reasonable" because it selected Taylors to provide the increased requirements for bottled water under the Prime Contract—initially through November 2014—even though Taylors submitted the highest bid, then extended Taylors' performance period without another round of competitive bidding. As to Count III, plaintiff contends that he engaged in "protected activity" when he questioned PAE's selection of Taylors for the subcontract and was unlawfully terminated in retaliation for that protected activity.

Defendant moves to dismiss Counts I and II under Federal Rule of Civil Procedure 12(b)(6) on the grounds that the Amended Complaint fails to state a claim upon which relief can be granted and under Federal Rule 9(b) on the grounds that plaintiff has failed to plead fraud with sufficient particularity. More specifically, PAE contends that under the facts alleged, even if accepted as true, it did not fail to comply with any alleged contractual requirement; it did not violate any of the federal procurement regulations on which plaintiff relies; it did not "falsely certify" any specific level of compliance, as plaintiff contends; and that in any event, it did not act with the requisite scienter. As to Count III, defendant moves to dismiss on the grounds that as alleged, plaintiff did not engage in "protected activity" as he must in order to bring a retaliation claim under the FCA.

### A. Defendant's procurement responsibilities under FAR

Defendant's Prime Contract with the Government is governed by the Federal Acquisition Regulations ("FAR"), codified at 48 C.F.R. § 31 *et seq.* The crux of plaintiff's Amended

Complaint is that PAE presented false or fraudulent claims because it included in its invoices to the Government subcontractor costs for bottled water from Taylors without complying with two specific provisions of the FAR: 48 C.F.R. § 52.244-5 ("FAR 52") and 48 C.F.R. §§ 31.201-2 and -3 (collectively, "FAR 31").[3]

As a preliminary matter, it is not clear whether any of the relied-upon regulations in fact govern, as plaintiff alleges, the award of the increased bottled water requirement. After DLA "determined that it would no longer supply bottled water" (Compl. ¶ 25) under the Prime Contract, the Government issued a Task Order to PAE for increased bottled water under the previously-awarded Prime Contract, ostensibly without any solicitation of competitive bids. Thereafter, in September 2014, PAE directed Taylors to provide the bottled water which it had been directed by DOS to supply under the Prime Contract. At that time, PAE had already selected Taylors as the subcontractor "to provide food supply . . . under Section B.7 of the Prime Contract," including, by plaintiff's own admission, bottled water, albeit of a relatively small quantity. *Id.* ¶¶ 22-23. It is therefore unclear whether PAE was, in the first place, obligated to solicit further bids from vendors other than Taylors before directing Taylors to increase its supply of bottled water.[4]

---

[3] 48 C.F.R. § 52.244-5 governs "Competition in Subcontracting" and states, in part: "The Contractor shall select subcontractors (including suppliers) on a competitive basis to the maximum practical extent consistent with the objectives and requirements of the contract." 48 C.F.R. § 31.201-2 governs "Determining allowability [of a cost] and states "[a] cost is allowable only when the cost complies with all of the following requirements: (1) reasonableness . . . ." 48 C.F.R. § 31.201-3 governs "Determining reasonableness" and states that "[a] cost is reasonable if, in its nature and amount, it does not exceed that which would be incurred by a prudent person in the conduct of competitive business."

[4] In this regard, the critical issue would appear to be whether PAE's "Notice to Proceed" to Taylors "materially departed" from the scope of Taylors' initially-awarded subcontract, given that the product was identical and only the quantity increased. *See infra* n.6.

8

In any event, plaintiff alleges that PAE did in fact solicit competitive bids and therefore was required to comply with the competitive bidding regulations codified in the FAR. The Amended Complaint alleges that PAE's award of the initial Notice to Proceed in September 2014 was preceded by a solicitation of "nine or so" competing bids for bottled water. *Id.* ¶ 32. Plaintiff does not allege that the Notice to Proceed was improper because of an insufficient number of competing bids. Rather, plaintiff contends that because Taylors' price was the highest, PAE's selection of Taylors essentially negated any bidding process on a "competitive basis." *See* [Doc. No. 22 at 16] ("the intentional selection of higher-priced equivalent options cannot constitute 'competition' . . . [because] intentionally selecting the higher-priced option without justification is not competition within the meaning of FAR or the Prime Contract"). In short, plaintiff points to Taylors' bid price as the basis for its claim that PAE submitted false claims.

The regulations applicable to what is required by way of a "competitive process" and what constitutes a "reasonable" price are general and by their terms confer a great deal of discretion and judgment on the selecting contractor.[5] Plaintiff has not cited any authority for the

---

[5] For example, the FAR does not define "competitive basis." But the parties appear to be in agreement that the term should be given the meaning adopted by the Federal Circuit. *See Res-Care, Inc. v. United States*, 735 F.3d 1384, 1388 (Fed. Cir. 2013) (defining competition as "rivalry between two or more businesses striving for the same customers or market") (internal citations omitted); *see also Mgmt. & Training Corp. v. United States*, 118 Fed. Cl. 155, 164-65 (Fed. Cl. 2013) ("The definition of 'competition' does not require unrestricted competition, but merely that at least two contestants vie for some opportunity"). As to price, 48 C.F.R. § 31.201-3(b)(2) states that "[w]hat is reasonable depends upon a variety of considerations and circumstances including . . . [g]enerally accepted sound business practices [and] arm's length bargaining" and FAR 15 states that normally "adequate price competition establishes a fair and reasonable price." *See also Afghan Am. Army Servs. Corp. v. United States*, 90 Fed. Cl. 341, 355 (Fed. Cl. 2009) (noting that FAR 15 looks to "adequate price competition" to determine whether costs are "fair and reasonable" and stating that "[t]he proper techniques for engaging in a reasonableness analysis include evaluating cost elements, including the necessity for and reasonableness of proposed costs") (internal citations omitted).

proposition that the highest bid constitutes an "unreasonable price" whose selection invalidates an otherwise valid competitive bidding process. Indeed, 48 C.F.R. § 15.404-1(b)(2)(i) ("FAR 15") provides that "[n]ormally, adequate price competition establishes a fair and reasonable price"; and one can readily imagine a wide range of relevant considerations other than the price itself, including some which plaintiff admits he understood might apply, in determining whether a price for supplying vital supplies in an active war zone was "reasonable," including incidental costs to the Government and a vendor's existing presence and experience in a hostile environment. For these reasons, the Court finds that plaintiff has not alleged facts sufficient to make plausible his claim that PAE's selection of Taylors failed to comply with any applicable federal bidding regulations because of its bid price.

Likewise, plaintiff has failed to allege facts to make plausible his claim that extending Taylors' performance beyond November 2014 also violated applicable procurement regulations because PAE did not solicit a new round of bids for that extension. Whether the extension—or "modification"—of the September 2014 subcontract award to Taylors constituted a new procurement depends on whether it "materially depart[ed] from the scope of the original procurement." *Ceradyne, Inc. v. United States*, 103 Fed. Cl. 1, 13 (Fed. Cl. 2012).[6] In making that determination, a court must analyze, among other factors, "whether the modification substantially changes the type of product or service being delivered or performed, the quantity of the product or service, the performance period, and the costs as between the original contract and the modified contract." *Id.* at 13. "[I]f the court concludes as a matter of law that the

---

[6] In *Ceradyne*, the Court of Federal Claims ultimately rejected the claim that a contract modification "was a material departure from the scope of the original competition" where except for quantity, the contract, as modified, was "identical" to the prior contract and the products "were otherwise to be produced to the same specifications, at the same reasonable unit price, in the same period of time." *Id.* at 14.

modification was contemplated in the original procurement and the type of work, quantity, performance period, and costs have not been substantially changed" then the modification does not "materially depart" from the scope of the original contract as it must in order to require a new bidding procedure. *Id.* In that regard, courts have recognized that modifications to an existing award that simply increase the quantity ordered at the same unit price do not require the government to conduct a new competition for the increased quantity. *Id.*; *see also AT&T Comm'ns v. Wiltel, Inc.*, 1 F.3d 1201, 1207 (Fed. Cir. 1993) ("An important factor in determining the scope of the original competition is whether the solicitation for the original contract adequately advised offerors of the potential for the type of changes during the course of the contract that in fact occurred, or whether the modification is of a nature which potential offerors would reasonably have anticipated") (internal citation omitted).

PAE's September 23, 2014 "Notice to Proceed" to Taylors confirmed that Taylors "ha[d] been awarded the U.S. State Departments [*sic*] requirement for bottled water and a Modification under Taylor's [*sic*] Subcontract . . . with PAE will be forthcoming." [Doc. No. 19 Ex. C]. Plaintiff has not alleged facts sufficient to make plausible any claim that the modification "materially departed" from the scope of the Taylors' initial selection in September 2014 to satisfy PAE's increased bottled water obligation under the Prime Contract.

In any event, even if plaintiff had sufficiently alleged such facts, the Amended Complaint fails to state a claim because it has not alleged facts that make plausible any contention that PAE made a "false statement" in connection with the presentation of a claim. Plaintiff does not allege any specific false statement that PAE actually made,[7] but rather relies on the "implied

---

[7] For example, as alleged in the Amended Complaint, the Prime Contract entitled PAE to recover its "actual incurred costs that the Contracting Officer determines is allowable under [FAR 31]."

11

certification" theory of liability to establish falsity. Under the rubric of that theory, plaintiff contends that when PAE submitted invoices that included its costs for bottled water procured from Taylors, it impliedly certified that the price paid for the bottled water was "reasonable" when it was, in fact, not "reasonable."

In the context of the FCA, the "implied certification" theory of liability has been recognized in various formulations. As it has taken shape within the Fourth Circuit, "a claim for payment is false when it rests upon a false representation of compliance with an applicable contractual term." *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 635 (4th Cir. 2015) (internal citations and alterations omitted). "Implied certification" liability is sufficiently pled when a party "alleges that the contractor, with the requisite scienter, made a request for payment under a contract and withheld information about its noncompliance with material contractual requirements." *Id.* at 636 (internal citations omitted). Therefore "the pertinent inquiry is whether, through the act of submitting a claim, a payee [here, PAE] knowingly and falsely implied that it was entitled to payment." *Id.* at 637.

Plaintiff has failed to sufficiently adduce facts that PAE withheld information about its noncompliance with material contractual requirements, or any other conditions for payment. Neither the Prime Contract nor the relevant Task Order required PAE to certify or represent as a condition of payment that it had complied with any applicable procurement regulations pertaining to subcontractor selection, or that Taylors' bottled water price was "reasonable."[8] Nor

---

Compl. ¶ 13. Plaintiff does not allege that PAE submitted costs that were not "actually incurred" or otherwise submitted any invoices that were factually false.

[8] Plaintiff's implied certification theory also appears to be somewhat at odds with both the terms of the Prime Contract and the FAR. For example, as alleged in the Amended Complaint, the Prime Contract entitled PAE to recover its "actual incurred costs that the Contracting Officer determines is allowable under FAR 31.201-2." Compl. ¶ 13. Because a cost is allowable under FAR 31 only when it complies with the requirement of "reasonableness," it would appear that

12

is compliance with those regulations necessarily bound up with the substance of PAE's contractual performance obligation to provide bottled water of an acceptable quality or quantity. *Cf. Triple Canopy*, 775 F.3d at 637-38 (holding that because a security guard's marksmanship ability was central to the prime contractor's performance obligations, it had "impliedly certified" compliance with that contractual obligation). Here, plaintiff points to no specific contract term that PAE has violated. Plaintiff has therefore failed to allege facts sufficient to make plausible his claim that PAE presented a false claim under an implied certification theory of FCA liability.

### B. Defendant's scienter as required under the False Claims Act

The Amended Complaint also fails to allege facts that make plausible any claim that PAE acted with the requisite scienter in presenting false claims. In order to state a claim for an FCA violation, a plaintiff must establish that there was intent on the part of the defendant to present a false claim. 32 U.S.C. § 3729(a)(1); *U.S. ex. rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 728 (4th Cir. 2010). A plaintiff need not show "specific intent to defraud," but at a minimum, must establish that a defendant acted with "reckless disregard of the truth or falsity of the information." *Id*; *see also Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662, 671-72 (2008) (scienter requires "that the defendant made a false record or statement for the purpose of getting a 'false or fraudulent claim paid or approved by the Government'") (quoting 31 U.S.C. § 3729(a)(2)).

Given the nature of the regulations relied upon by plaintiff—including their lack of specificity and the broad discretion afforded contractors in determining the required level of bid competition and the "reasonableness" of a subcontract price—and regardless of whether PAE

---

payment is conditioned upon the Contracting Officer's determination of "reasonableness," not PAE's "certification" of reasonableness as a condition for payment. *See also* FAR 15 ("The contracting officer is responsible for evaluating the reasonableness of the offered prices").

13

complied with those regulations, plaintiff has not alleged facts that make plausible his claim that PAE knew that its submitted costs were not "reasonable." Nor are the facts sufficient to make plausible a claim that PAE acted in "reckless disregard of the truth or falsity" of its compliance with applicable regulations or the "reasonableness" of its submitted costs. In sum, the Court finds that plaintiff has failed to sufficiently allege that PAE acted with scienter in purportedly violating the FCA, and therefore, his claims fail on this additional ground.

### C. Federal Rule 9(b)'s particularity requirement

For the above reasons, the Amended Complaint also necessarily fails to meet Rule 9(b)'s well-established heightened pleading requirements. In addition to failing to allege that PAE acted with the requisite scienter, plaintiff also fails to allege the "who, what, when, where and how of the alleged fraud." *McLain v. KBR, Inc.*, No. 1:08-cv-499, 2014 WL 310818, at *5 (E.D. Va. July 7, 2014) *aff'd* 612 Fed. App'x 187 (4th Cir. 2015). *See also Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999); 5 Charles Alan Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE: Civil § 1297, "Pleading Fraud with Particularity–In General" (3d ed. 2015). Counts I and II accordingly fail on this final independent ground.

### D. Plaintiff's retaliation claim

The Court also finds that plaintiff's retaliation claim is insufficient as a matter of law. In 1986, Congress amended the FCA to include an anti-retaliation provision to protect whistleblowers. *See* 31 U.S.C. § 3730(h)(1). This provision provides a cause of action to "[a]ny employee . . . discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under [the FCA]." *Id.* A successful claim for retaliation under Section 3730(h) requires the plaintiff to establish three basic elements: that (1)

he engaged in "protected activity" by acting to prevent a violation of the FCA; (2) his employer knew of these acts; and (3) his employer took adverse action against him as a result of these acts. *Zahodnick v. Int'l Bus. Mach. Corp.*, 135 F.3d 911, 914 (4th Cir. 1997). An employee must not necessarily file a *qui tam* suit to engage in "protected activity." *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 867 (4th Cir. 1999). However, the whistleblower's activity "must concern 'false or fraudulent claims,' or it is not protected activity under the FCA." *Glynn v. EDO Corp.*, 710 F.3d 209, 214 (4th Cir. 2013) (quoting *Eberhardt*, 167 F.3d at 868).

In order for activity to be "protected," "an employee's opposition to fraud [must] take[] place in a context where 'litigation is a distinct possibility, when the conduct reasonably could lead to a viable FCA action, or when . . . litigation is a reasonable possibility.'" *Mann v. Heckler & Koch Def., Inc.*, 630 F.3d 338, 344 (4th Cir. 2010) (quoting *Eberhardt*, 167 F.3d at 869). The court in *Heckler* went on to explain that "[t]he distinct possibility standard is an objective one" which requires that "protected activity relate to company conduct that involves an objectively reasonable possibility of an FCA action . . . from the perspective of the facts known by the employee at the time of the protected conduct." *Id.* at 344-45. Moreover, it must be remembered that "[c]orrecting [federal bidding] regulatory problems may be a laudable goal, but one not actionable under the FCA in the absence of actual fraudulent conduct." *Id.* at 346 (citing *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996)); *see also U.S. ex rel. Connor v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1219 (10th Cir. 2008) (federal bidding violations are not actionable under the FCA absent fraud). To that end, courts have recognized that, the "distinct possibility" standard notwithstanding, "[s]imply reporting [a] concern of a mischarging to the government to his supervisor does not suffice to establish" that a whistleblower plaintiff was engaging in "protected activity." *Lee v. Computer Sci. Corp.*, No. 1:14-cv-581, 2015 WL

778995, at *6 (E.D. Va. Feb. 24, 2015) (citing *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (4th Cir. 2010)).

Here, plaintiff has failed to plead anything more than his subjective belief that PAE had expanded Taylors' subcontract in violation of applicable procurement regulations. But as discussed above, plaintiff has not alleged facts that make plausible that there was an "objectively reasonable" possibility that PAE was engaged in fraudulent conduct, such that a "viable" FCA claim was a "distinct possibility." Plaintiff therefore fails to sufficiently allege that he engaged in "protected activity" under 31 U.S.C. § 3730(h). Nor has plaintiff alleged facts sufficient to make plausible that PAE knew that plaintiff had engaged in activity intended to uncover or prevent fraudulent activity. At most, plaintiff alleges that he placed PAE on notice that he disagreed with Taylors' selection and that he thought the process utilized for that selection was flawed and that PAE might be able to obtain a better price. In sum, the Court finds that plaintiff has not sufficiently alleged that he was terminated in retaliation for protected activity.[9]

## IV. CONCLUSION

For the above reasons, the Court finds and concludes that plaintiff has failed to state a claim under the False Claims Act, as alleged in Counts I, II and II of the Amended Complaint. Accordingly, defendant's Motion to Dismiss must be granted, and the case dismissed.

An appropriate Order will issue.

Alexandria, Virginia
February 25, 2016

/s/
Anthony J. Trenga
United States District Judge

---

[9] Given the above findings with respect to the first two elements of plaintiff's retaliation claim, the Court declines to determine whether the Amended Complaint adequately alleges a sufficient causal connection between plaintiff's claimed protected activity and his termination.